UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| BERNARD TEW, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No. 5:23-cv-00345-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| MCML LTD., | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Mr. Tew asserts that he was swindled out of $70 million in a "diabolical" fraud perpetrated by the custodian of his brokerage account. The complex, international scheme allegedly victimized over 270 United States pension plans while implicating the enforcement authority of Germany, Denmark, Belgium, Finland, the Netherlands, and the United Kingdom. By prior order, the Court granted in part and dismissed in part Mr. Tew's federal complaint. Now, Defendant ED&F moves to reconsider a portion of that Order. For the reasons that follow, ED&F's Motion is **GRANTED IN PART** and **DENIED IN PART.**

I

Plaintiff Bernard Tew is a resident of Kentucky and the trustee of Plaintiff Bluegrass Retirement Group Trust (a pension plan).[1] [R. 1 at 5.] Beginning in 2012, Tew contracted with Defendant MCML (f/k/a ED&F) to conduct "dividend arbitrage trading" in Europe on the Plaintiffs' behalf. *Id.* at 3. Tew also hired Arunvill Capital UK to manage his investments; he generally communicated with ED&F (a London firm) through Arunvill. *Id.* at 10. Between

---

[1] The facts recounted here are taken from the Court's Opinion & Order at R. 30.

2012 and 2015, ED&F allegedly embezzled over $70 million from Bluegrass Trust through a fraudulent tax practice known as "cum-ex" trading. *Id.* at 13–14.

In particular, Plaintiffs state that ED&F used Bluegrass "as a conduit to conduct [] fraudulent transactions[.]" *Id.* at 4. Those transactions worked like this: ED&F used a third-party broker to conduct "circular" trades. *Id.* at 20. Specifically, "[Bluegrass Trust] purportedly purchased shares [] prior to the date a dividend would be issued from an ED&F affiliate . . . that did not have the shares and only obtained them by buying the shares from the [Bluegrass Trust] (through ED&F) following the dividend date at a lower price." *Id.* "In effect, neither ED&F nor [Bluegrass Trust] had the shares on the date the dividend was issued, and thus they were ineligible to receive refunds for withholding taxes." *Id.*

Nonetheless, ED&F allegedly filed fraudulent tax vouchers with foreign governments on Plaintiffs' behalf. *Id.* at 5, 11, 18. Tew states that he never saw these vouchers. *Id.* at 12. Instead, ED&F "submitted the vouchers directly to . . . a third party payment-processing agent, which submitted the applications for refunds directly to the foreign tax authorities." *Id.* Then, the third party "would [] pay ED&F for all refunds received from the tax authorities, and ED&F would distribute Bluegrass' portion of the profits to its prime brokerage account." *Id.*

Throughout this period, Tew states that ED&F routinely sent doctored trading ledgers and account statements to Tew's email. *Id.* at 10, 21. These counterfeit statements were apparently intended "to give [Plaintiffs] the false impression that the trades in fact occurred and the dividends underlying the tax vouchers were received." *Id.* This state of affairs continued for several years.

Finally, in 2015, Tew attempted to access the funds in the Bluegrass account. *Id.* at 13. He reached out to Arunvill and ED&F; but despite repeated attempts, they could not be reached.

*Id.* at 14. Arunvill had "seemingly dissolved," and "ED&F refused to engage with Tew directly." *Id.* Apparently quite perturbed, "Tew considered traveling to London to confront ED&F in person[.]" *Id.* However, he "was unable to do so in light of his financial constraints." *Id.* Later, he discovered that the Bluegrass account "had been closed in January 2015 with a balance of zero." *Id.*

In 2018, the Danish tax authority (SKAT) began to crack down on "cum-ex" trading. SKAT sued Tew and Bluegrass for $39 million in a multidistrict litigation (MDL) action involving myriad other pension plans. *Id.* at 15; *see In re Customs & Tax Admin. of Kingdom of Den. (Skatteforvaltningen) Tax Refund Scheme Litig.*, No. 1:18-md-02865-LAK (S.D.N.Y. Oct. 9, 2018). Tew settled for around $34 million. [R. 1 at 17.] Then, "following the filing of the SKAT Actions, several of Tew's clients who had invested retirement funds in pension plans he managed sued Tew to recover their investments of more than $4.5 million, which Plaintiffs later discovered ED&F had stolen." *Id.* at 16. Ultimately, Tew "was forced to defend 30 actions against him and the pension plans he managed in both the U.S. and Europe." *Id.* These suits "severely damaged Tew's reputation as a retirement fund manager, and thus made it extremely difficult for him to generate income." *Id.* "Unable to pay [his] attorneys' fees," Tew filed for Chapter 11 bankruptcy in 2020. *Id.*

In the intervening years, the magnitude of ED&F's fraud was revealed: apparently, ED&F had used almost 300 United States pension plans to conduct its fraudulent tax scheme. *Id.* at 4. Tew later learned that "Bluegrass was necessary for ED&F to carry out its scheme because, under tax treaties between the U.S. and various European countries, U.S. pension plans are exempt from taxes on dividend payments that are otherwise withheld by the European tax authorities." *Id.* at 2. Thus, "ED&F [] targeted U.S. pension plans (including Bluegrass) so that

3

it could pretend to execute a legal 'dividend arbitrage strategy' on its behalf and share the profits from tax refunds obtained from the European tax authorities with the U.S. plan." *Id.* at 3.

The fallout continued: ED&F was also sued by SKAT. *Id.* at 21. Then, its London offices were raided in 2022 by German and Danish investigators "as part of a sprawling probe into cum-ex trading that purportedly defrauded those governments out of billions of dollars." *Id.* at 22. Finally, in 2023, ED&F incurred a 17.2 million pound fine from the United Kingdom's financial regulatory body. *Id.*

Mr. Tew maintains that he did not know of his alleged injury until 2021. He chalks that delay up to a few things. First, he emphasizes that ED&F maintained its innocence as to all or some of the allegations. *Id.* at 19. Next, he notes that ED&F "fraudulently concealed that it had embezzled the funds from the Bluegrass primary brokerage account by representing (through Arunvill) that upon the closing of the account, the funds would be transferred to an ED&F omnibus account that would ultimately distribute the funds back to Bluegrass." *Id.* at 24. Further, he explains that "only after Tew settled the SKAT actions and agreed to cooperate in the investigation of third parties in June 2021 were Plaintiffs given access to additional information procured by SKAT that showed in more detail the scope and breadth of ED&F's scheme." *Id.* at 19. Mr. Tew and Bluegrass filed the instant Complaint against ED&F in December 2023. [R. 1.] On September 27, 2024, the Court entered an Opinion & Order dismissing Tew's federal RICO claims as time barred. [R. 30.] It further dismissed several state law claims while permitting other state claims to proceed. *Id.* Now, Defendant ED&F requests that the Court reconsider the portion of its opinion permitting certain state claims to proceed based on the confidential relationship exception to the statute of limitations. [R. 34.] Further, it requests

dismissal of the equitable indemnification claim due to recent developments in the Tew bankruptcy proceeding. *Id.*

## II

A federal district court has the authority to reconsider interlocutory orders under both the common law and Federal Rule of Civil Procedure 54(b). *Rodriguez v. Tenn. Laborer's Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). Courts reconsider interlocutory orders only "when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Id.* A motion to reconsider an interlocutory order is not an invitation for the parties to relitigate the issue. *See Hazard Coal Corp. v. Am. Res. Corp.*, No. 6:20-CV-010-CHB, 2022 WL 18638743, at *3 (E.D. Ky. Sept. 9, 2022).

### A

First, ED&F asserts that this Court committed a clear error of law by relying on Kentucky Revised Statute § 413.190(2) to toll the statute of limitations on Tew's state tort claims. [R. 34-1 at 10.] In its prior Opinion, the Court explained as follows:

> When a cause of action mentioned in KRS 413.090 to 413.160 accrues against a resident of this state, and he by absconding or concealing himself or by any other indirect means obstructs the prosecution of the action, the time of the continuance of the absence from the state or obstruction shall not be computed as any part of the period within which the action shall be commenced. Ky. Rev. Stat. Ann. § 413.190(2). Typically, concealment requires an affirmative act. *Osborn*, 865 F.3d at 437. But "where the law imposes a duty of disclosure, a failure of disclosure may constitute concealment[.]" *Munday v. Mayfair Diagnostic Lab'y*, 831 S.W.2d 912, 915 (Ky. 1992). Such is the case where the parties have a "confidential relationship." *Osborn*, 865 F.3d at 437.
> In the confidential relationship context, only *actual discovery* of the fraud triggers the countdown. *See Hernandez v. Daniel*, 471 S.W.2d 25, 26 (Ky. 1971); *Boone v. Gonzalez*, 550 S.W.2d 571, 574 (Ky. Ct. App. 1977) (explaining that, when the parties have a fiduciary relationship, "there [is] no duty on the part of the injured party to exercise due diligence to discover the fraud"); *Osborn*, 865 F.3d at 439–40 ("Kentucky law excuses plaintiffs' failure to discover defendants' wrongful conduct" when the defendant "abuses a confidential relationship to prevent the

5

plaintiff from discovering her cause of action."). This carve-out makes good sense: "persons in a confidential relationship do not have the reason or occasion to check up on each other that would exist if they were dealing at arm's length." *McMurray v. McMurray*, 410 S.W.2d 139, 141–42 (Ky. 1966).

*Tew v. MCML Ltd.*, 751 F. Supp. 3d 733, 751 (E.D. Ky. 2024). Although Tew acknowledges that § 413.190(2) refers to a cause of action accruing against residents of Kentucky, he asserts that the Court instead applied a more nebulous confidential relationship exception found in the common law and predating the statutory language, itself. [R. 36 at 10.] Moreover, Tew asserts that "application of the confidential relationship exception outside the context of Kentucky's tolling statute makes sense in view of the fact that the tolling statute itself is merely an acknowledgment by the Kentucky legislature of a broader, judicially-created, and equitable doctrine of fraudulent concealment." *Id.* at 12. The Court agrees with Tew.

As a threshold issue, ED&F is correct that the plain language of § 413.190(2) applies only to Defendants domiciled in Kentucky. Kentucky courts and federal courts interpreting Kentucky law have acknowledged the same. *See Wright v. Swigart*, No. 2016-CA-000854-MR, 2018 WL 565824, at *4 (Ky. Ct. App. Jan. 26, 2018) ("The statutory language is unequivocal, and our Supreme Court has expressly held that KRS 413.190(2) does not apply to a company that 'is not a resident of Kentucky.'" (quoting *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 62 n.9 (Ky. 2010))); *Cox v. Reliant Rehab. Holdings, Inc.*, No. 3:22-CV-00046-GFVT, 2023 WL 4166081, at *5 (E.D. Ky. June 23, 2023) ("[T]he statute tolls the limitations period only for 'a cause of action . . . against a resident of this state.' In other words, Kentucky's tolling statute 'does not apply to nonresidents of Kentucky.'") (internal citation omitted). Because ED&F is not domiciled in Kentucky, it appropriately points out that the statute is inapposite.

6

The operative question then becomes whether a common law confidential relationship exception exists, and, if so, whether it may toll the statute of limitations for nonresident defendants. ED&F says no. Tew says yes. Because the Court agrees with Tew, it declines to reconsider its decision to permit tolling at the motion to dismiss stage.

First, Tew correctly points out that many cases the Court relied upon in articulating the confidential relationship exception made no mention of § 413.190(2). *See Hernandez v. Daniel*, 471 S.W.2d 25, 26 (Ky. 1971) (making no mention of § 413.190(2)), but explaining that "[w]hen a confidential relationship exists between the parties, [] the statute does not begin to run until actual discovery of the fraud of mistake."); *Boone v. Gonzalez*, 550 S.W.2d 571, 574 (Ky. Ct. App. 1977); *McMurray v. McMurray*, 410 S.W.2d 139, 141-42 (Ky. 1966). He further cites to district court cases applying the common law exception without reference to the statute. *C-Ville Fabricating, Inc. v. Tarter*, No. 5:18-379-KKC, 2023 WL 2172185, at *10-12 (E.D. Ky. Feb. 22, 2023) (applying confidential relationship exception without reference to KRS § 413.190(2)), *rev'd on other grounds*, 2024 WL 1197864 (E.D. Ky. Mar. 20, 2024). This, of course, suggests that the confidential relationship exception can apply independently of § 413.190(2).

Additional case law supports this conclusion. "Kentucky has codified the doctrine of fraudulent concealment by enacting KRS 413.190(2)." *B.L. v. Schuhmann*, 380 F. Supp. 3d 614, 643 (W.D. Ky. 2019); *see Munday v. Mayfair Diagnostic Lab.*, 831 S.W.2d 912, 914 (Ky. 1992) ("We have held that this tolling statute is simply a recognition in law of an equitable estoppel or estoppel *in pais* to prevent fraudulent or inequitable application of a statute of limitation."); *Adams v. Ison*, 249 S.W.2d 791, 793 (Ky. 1952) ("Such a statute is essentially a recognition in law of an equitable estoppel or estoppel in pais to prevent a fraudulent or inequitable resort to a plea of limitations. That such estoppel is applicable to preclude the defense of limitations in

7

actions ex delicto in such instances or under such conditions is recognized in our cases cited above and by the great weight of authority."); *see also id.* (noting that "[u]nder some circumstances the terms of the statute, KRS 413.140(2) may be more favorable to the injured party than equitable estoppel."). Finally, Plaintiff Tew cites to a district court case applying equitable estoppel to a non-Kentucky defendant in the confidential relationship context. *See Marcum v. PNC Bank, Nat'l Ass'n*, No. 3:21-CV-289-RGJ, 2023 WL 146253, at *3 (W.D. Ky. Jan. 10, 2023). Moreover, the Court is not aware of a reason why the common law exception would not apply to a non-resident.

Accordingly, the Court declines to reconsider its prior determination. ED&F is correct that the Court's Opinion & Order was unclear as to whether it relied on common law or statutory authority. The Court now clarifies that, for the reasons articulated in the Court's prior Opinion & Order, the common law (but not KRS 413.190(2)) plausibly applies to toll the statute of limitations at the motion to dismiss stage. *See Tew*, 751 F. Supp. 3d at 752-53; *see also Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) ("[A] motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations.").

**B**

Next, ED&F states that new developments in the Tew bankruptcy proceeding require reconsideration of the Court's ruling on Tew's equitable indemnity claim. [R. 34-1 at 11.] In its Opinion & Order, the court permitted Tew's equitable indemnity claim to proceed "[b]ecause [Tew] settled the SKAT claims, and because the settlement amount is considered an allowed claim[.]" *Tew*, 751 F. Supp. 3d at 760. ED&F now explains that, following this court's ruling

8

on the motion to dismiss, Tew "put to rest even the theoretical possibility that any payment would be made on SKAT's allowed claim, for in his latest filings in the Bankruptcy Court—submitted in support of a request for entry of discharge—Tew stated unequivocally that SKAT's allowed claim would go unpaid." [R. 34-1 at 13.] "Tew additionally certified to the Bankruptcy Court that all plan payments had been completed—with not a penny paid to SKAT." *Id.* Because Tew's initial arguments about the allowed claim representing an actual liability are no longer applicable, ED&F requests reconsideration.

Tew disagrees. First, he emphasizes that "he specifically requested that the bankruptcy case remain open until the conclusion of this case." [R. 36 at 14.] He did so to "ensure that even if a discharge were granted, the potential would exist for his unsecured creditors, such as SKAT, to recover from the estate." *Id.* Second, Tew asserts that, even accepting ED&F's argument as true, it still "remains unknown whether the bankruptcy court will grant the request." *Id.* at 15. Because we don't know what the bankruptcy court will do, Tew asserts there is no "newly discovered evidence" warranting consideration.

The equitable indemnity plaintiff must allege that: "1) he is subject to liability, but 2) he is exposed to such liability as a result of the actions of another person and that 3) the other person should as a matter of public policy in law or equity be required to make good the party's loss." *Long v. Illinois Cent. Gulf R. Co. in Paducah, Ky.*, 660 F. Supp. 469, 471 (W.D. Ky. 1986). "[T]he indemnitee must allege that the indemnitee was subject to actual legal liability." *Id.* at 473. In other words, he must show that "his liability was certain, and that there was no impediment or defense to the claim against him." *Id.* at 472.

Here, on Tew's own explanation of the state of affairs in Bankruptcy Court, it is merely "possible" that SKAT's claim will be paid. Thus, the Court agrees with ED&F that newly

9

discovered evidence undermines Tew's allegation that "his liability was certain, and that there was no impediment or defense to the claim against him." This new evidence therefore requires reconsideration of the Court's prior conclusion, which rested on Tew's assertion that he was actually liable to SKAT. Because he fails to "allege that [he] was subject to actual legal liability[,]" the Court will dismiss Tew's equitable indemnity claim. *See Long*, 660 F. Supp. at 473.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. ED&F's Motion to Reconsider **[R. 34]** is **GRANTED IN PART** and **DENIED IN PART;** and

2. Plaintiff Tew's claim for equitable indemnity is **DISMISSED.**

This the 12th day of September, 2025.

Gregory F. Van Tatenhove
United States District Judge